# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RUDY M. MARQUEZ,

      Plaintiff,

vs.                                                                                     Civ. No. 02-0951 RHS

JO ANNE BARNHART, Commissioner,
Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed May 6, 2003 [Doc. No.15]. The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Plaintiff, age 47, alleges a disability which commenced January 1, 1994 due to back pain and mental problems.

    2. The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") also denied the applications, concluding that Mr. Marquez had the residual functional capacity for simple repetitive light work  The Appeals Council denied review of the ALJ's decision, thus  the ALJ's decision is the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).  At the time of the

Commissioner's final decision, claimant was 43 years old, had three years of college and past work experience as a leadman repairing rail cars and track for a mining company.

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises two issues on appeal. First, he contends that the vocational expert's testimony did not provide substantial evidence to support the ALJ's finding that Plaintiff could perform production line assembly work and was therefore not entitled to benefits. Second, he claims that the ALJ erred in finding that Plaintiff did not suffer from a severe mental impairment on the date he was last insured.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; See 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the

listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past.  At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7.  The ALJ found at step four that Plaintiff could no longer perform the heavy exertional requirements of his past relevant work.  The ALJ then denied benefits at step five based upon vocational expert testimony that Mr. Marquez retained the ability to perform other work.

8.  Mr. Marquez testified that he was injured in an accident at work in 1988 and has suffered from chronic back pain since that time.  Tr. at 39.  He stated that he was able to sit for 15-20 minutes at a time and able to stand for 10-15 minutes at a time.  Tr. at 36.  He testified that he felt anxious, angry, and depressed since the accident.  Tr. at 41-46.

9.  Plaintiff was treated by a neurologist, Dr. Steven Crouse, from April to November 1988.  Dr. Crouse prescribed a transcutaneous nerve stimulator (TNS) unit and back exercises which provided some relief of Plaintiff's pain.  Tr. at 203-210. Dr. Crouse also referred Plaintiff to a psychologist, Dr. Randolph Whitworth, in September 1988.  Dr. Whitworth administered a Minnesota Multiphasic Personality Inventory ("MMPI") test. The MMPI showed elevation of hypochondria, hysteria and depression indexes and a high stress index. Dr. Whitworth found Plaintiff to be a very frustrated, angry and socially withdrawn, isolated and alienated individual. He recommended that Plaintiff should consider psychiatric intervention or psychotherapeutic medication. Tr. at 170-172.

10. In early 1989, Plaintiff saw an orthopedic surgeon, Dr. J. B. Redekop, who ordered a myelogram with enhanced CT scan.  The results were interpreted by Dr. Redekop as being

basically normal. Dr. Redekop prescribed pain medication and recommended a back rehabilitation regimen. Tr. at 174-175. From late 1989 to 1993, Plaintiff was treated by orthopedic surgeon, Dr. Lloyd Hurley, who performed two facet injections, restricted lifting to 25 pounds and prescribed pain medication. Tr. at 219-238. Plaintiff also received prescriptions for pain and anxiety from Dr. Anaya Cadena in Palomas, Mexico, who indicated that Plaintiff was his patient for several years, however, there are no documents in the record concerning Plaintiff's treatment in Mexico between a treatment note dated February 13, 1993, and records from a visit on May 6, 1999. Tr. at 312-315.

11. An orthopedic consultative examination was performed by Dr. Walter Trafton on January 6, 1992. Dr. Trafton found no objective evidence of facet or discogenic disease and no radiculopathy was noted at this examination. On August 26, 1994, Plaintiff saw Dr. Trafton for another consultative appointment and Mr. Marquez refused to be examined. Tr at 211-217, 239-244.

12. On September 14, 1995 and January 11, 1996, psychologist Conrad Curtis examined Plaintiff. He administered several tests, including another MMPI, and completed a Medical Assessment of Ability to do Work Related Activities, Mental form. Dr. Curtis rated Plaintiff's abilities as fair to poor in most areas and noted that Plaintiff's depression and withdrawal would limit him seriously in interaction on the job, especially with supervisors. He opined that Plaintiff had been chronically depressed from childhood. He diagnosed a major depressive episode, recurrent. Tr. at 253-262.

13. On April 22, 1996, the first ALJ remanded Plaintiff's case for evaluation of Plaintiff's mental disorder. In June of 1996, a consultative psychiatric evaluation was done by Dr. Jorge

Vargas, who found that Plaintiff had significant impairments in his ability to relate to others, maintain attention and withstand the stress associated with everyday work activity. Dr. Vargas diagnosed a major depression, recurrent, and panic disorder. Tr.at 280-282.

**First Alleged Error**

14. Mr. Marquez argues that the testimony of the vocational expert ("VE") did not provide substantial evidence to support the ALJ's denial of benefits. When, as in this case, both exertional and nonexertional impairments diminish a claimant's residual functional capacity, the Commissioner must produce expert vocational testimony to establish the existence of jobs in the national economy. See Cruse v. U.S. Dept. of Health & Hum. Serv., 49 F.3d 614, 619 (10th Cir. 1995).A VE's testimony can provide substantial evidence to support the ALJ's findings if the hypothetical question presented to the vocational expert adequately reflects the state of the record. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993); Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991).

15. The ALJ asked three hypothetical questions. The first hypothetical asked the VE to assume that the claimant had seriously limited but not precluded ability to follow work rules, use judgement, deal with work stresses, function independently, maintain attention and concentration, follow simple instructions and behave in an emotionally stable manner and no useful ability to deal with the public, interact with supervisors and co-workers, and to follow detailed complex instructions. The VE responded that these limitations would preclude the claimant from working. Tr. at 50-52. The ALJ then asked the VE to assume that the claimant had limited but not precluded ability to follow work rules, relate to co-workers, deal with work stresses and maintain attention and concentration. The VE responded that such a hypothetical claimant would be

capable of simple factory work. Tr. at 51-52. Finally, the ALJ asked the VE to consider the limitations of the second hypothetical and add a sitting/standing/walking limitation not to exceed 30 minutes at any one time with no climbing, stooping, bending, crouching, crawling, pushing, pulling or reaching overhead. The VE responded that such a hypothetical claimant would be capable of production line assembly. Tr. 52-53.

16. The ALJ used the VE's response to the third hypothetical question to support his finding that the Plaintiff was not disabled. The ALJ could properly reject the answers to his first two hypothetical questions and accept her opinion regarding the third hypothetical situation. A VE's opinion in response to a hypothetical is not binding on the ALJ where it is based on impairments that the ALJ did not accept as true. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990). However, as discussed below, the Court finds that the ALJ was hampered by the lack of medical evidence from the pertinent time period when he evaluated the Plaintiff's alleged mental impairment and formulated his hypothetical questions.

**Second Alleged Error**

17. Plaintiff alleges that the ALJ erred when he determined that Mr. Marquez did not suffer from a severe mental impairment on the date last insured ("DLI"). Mr. Marquez is required to prove that his disability began on or before his DLI. Flint v. Sullivan, 91 F.2d 264, 267 (10th Cir. 1991). Evidence of impairment which came into existence or reached disabling severity after expiration of his insured status cannot be basis for finding of disability. See Hawkins v. Chater, 113 F.3d 1162 (10th Cir.1997) (citing Hill v. Sullivan, 924 F.2d 972, 974 (10th Cir 1991)).

18. The burden to prove disability in a social security case is on the claimant. Hawkins v. Chater, 113 F.3d 1162 (10th Cir.1997) (citing Hill v. Sullivan, 924 F.2d 972, 974 (10th Cir 1991).

However, unlike the typical judicial proceeding, a social security disability hearing is nonadversarial, id., (citing Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir.1987)), with the ALJ responsible in every case "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised," Hawkins at 1162 (citing Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th Cir.1993)); 20 C.F.R. S 404.944 (requiring the ALJ to "look[ ] fully into the issues") (other citations omitted).

19.  After the Administration initially denied Plaintiff's claim and his request for reconsideration, ALJ Earl Waits vacated the reconsideration determination and remanded Plaintiff's case for evaluation of his alleged mental disorder, completion of a Psychiatric Review Technique Form and a revised reconsideration determination.  Judge Waits' attempt "to look fully into the issues" necessarily included development of an adequate record to determine not only if Plaintiff suffered from a severe mental impairment, but whether Plaintiff suffered from that mental impairment before the expiration of his insured status. After completion of the mental disorder evaluations (which did not relate back to the DLI), the Commissioner again denied benefits. Plaintiff's request for a hearing was granted and a second ALJ, Judge Larry Johnson, conducted the hearing.

20.  When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow a special procedure for evaluation of mental impairments set forth in 20 C.F.R. § 404.1520a. See Cruse v. U.S. Dep't of Health & Hum. Serv., 49 F.3d 614, 616 (10th 1995). The procedure requires first a careful review of the case record to determine if a mental impairment exists. Andrade v. Sec'y of Health & Hum. Serv., 985 F.2d 1045, 1048-49 (10th Cir. 1993); 20 C.F.R. § 404.1520a(b)(1).    Upon finding a mental

impairment, the Commissioner must determine the presence or absence of "certain medical findings which have been found especially relevant to the ability to work," sometimes referred to as the "Part A" criteria. 20 C.F.R. § 404.1520a(b)(2). The Commissioner must then evaluate the degree of functional loss resulting from the impairment, using the "Part B" criteria. Robertson v. Chater, 900 F.Supp. 1520, 1528-29 (D.Kan. 1995), (citing 20 C.F.R. § 404.1520a(b)(3) and Cruse, 49 F.3d at 617 (10th Cir. 1995)).

21. The Commissioner must record her conclusions on a standard document, the Psychiatric Review Technique Form ("PRT") that tracks the listing requirements and evaluates the claimant under the Part A and B criteria. Id. At the ALJ hearing level, the regulations allow the ALJ to complete the PRT form with or without the assistance of a medical advisor and require the ALJ to attach the form to his or her written decision. Id.

22. The ALJ completed the PRT himself. Tr. at 19-22. He evaluated Plaintiff based on the Part A criteria for Affective Disorders (Listing 12.04) and for Somatoform Disorders (Listing 12.07). He determined under the Part B criteria that these disorders caused Plaintiff to have only slight restrictions of activities of daily living and slight difficulty in maintaining social functioning. He found that Plaintiff seldom had deficiencies of concentration, persistence or pace. Tr. at 22.

23. The ALJ's decision discussed the examinations conducted by a psychologist, Conrad Curtis, Tr. at 253-257, and a psychiatrist, Jorge Vargas, Tr. at 280-283. Both Dr. Vargas and Dr. Curtis found Plaintiff to be more limited by his mental problems than the ALJ. A PRT was also completed by consultant psychologist, Kay Nations, based on her review of the record, Tr. at 284-295. Dr. Nations found Plaintiff to be moderately limited in his ability to maintain social

functioning. She related her findings back to September 1994, which is subsequent to the DLI found by the ALJ. Two DDS worksheets and the Administration's letter of July 27, 1996, however, state that Plaintiff was last insured on September 30, 1994. Tr. at 270, 297, 298. If the accurate DLI is September 30, 1994, then Dr. Nation's findings relate back to the relevant time period. If, on the other hand, the accurate DLI is June 30, 1994, then the PST completed by the agency's nonexamining consultant, like the examining doctors reports, does not address Plaintiff's mental status prior to the expiration of his insured status.

24. The ALJ disregarded the opinion of the agency's consultant, Dr. Vargas, because the assessment "did not relate to the period at issue." Tr at 15. The opinion of Dr. Curtis was also disregarded by the ALJ, partly because his report didn't specifically address the relevant time period . Tr. at 14. Although the ALJ did discuss the 1988 MMPI performed by Dr. Whitehead, the ALJ did not address Dr. Whitehead's opinion that psychiatric intervention or psychotherapeutic medication should have been considered at that time. Tr. at 15. The PRT competed by the agency's non-examining consultant, Dr. Nations, was not mentioned in the decision.

25. ALJ Waits believed that the record did not contain sufficient medical evidence for him to make an informed decision as to Plaintiff's alleged mental impairment. The case was remanded, the agency arranged for a psychiatric examination to be conducted and the PRT to be completed by a medical advisor, and because the evaluators were not asked to consider the relevant time period, ALJ Johnson rejected the reports. This result disregards the purpose of the Order by the ALJ previously assigned to this case, renders the expenditure of time and funds by the Administration on remand meaningless, and indicates that the ALJ may have substituted his

judgement for that of the doctors which he may not do. See Sisco v U.S. Dept. of Health & Hum. Servs., 10 F.3d 739, 743 (10th Cir. 1993).

26. Dr. Vargas and Dr. Curtis both indicated that Plaintiff's depression was recurrent. Those findings are sufficient to suggest the possibility that a severe impairment existed on the DLI. Dr. Vargas did not specifically relate his diagnosis back to the DLI because the agency failed to inform him that a retrospective diagnosis was necessary. The nonexamining psychologist, Dr. Nations, did not relate her findings back to the DLI because of inconsistencies in the agency's own record. Although a retrospective diagnosis alone will not support a finding of disability, Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995), other evidence of record combined with a retrospective diagnosis may be sufficient. See Birnell v. Apfel, 45 F.Supp.2d 826, 836 (D. Kan.1999). The Court will therefore remand the case to the Administration and direct the Commissioner to conduct another consultative psychiatric examination in order to obtain a retrospective diagnosis. Alternatively, if Dr. Vargas is able to relate his findings back to the date Plaintiff was last insured, the Administrative record may be sufficiently developed for an informed decision to be made.

27. The Court notes that the Plaintiff's application for benefits was submitted on July 22, 1994, almost nine years ago. The Commissioner should make every effort to obtain the necessary information to resolve this case promptly.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing [Doc. No. 15] is granted.  This case will be remanded to the Commissioner in order to further develop the record concerning Plaintiff's mental impairment at the time of the expiration of his insured status.

*Robert Hayes Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE